OPINION OF THE COURT
David B. Saxe, J.
The principal issue that I must resolve in this novel small claims case is the following: Does the performance by a stranger of what is alleged to be either a duty or a “mitzvah” (a good deed) (see Klein, A Guide to Jewish Religious Practice [NY Jewish Theological Seminars of Amer., 1979, p 229]) under Jewish law — viz., arranging for the burial of their deceased Jewish neighbor who appeared to have no surviving relatives to perform this function and incurring the obligation for the costs of burial — require the decedent’s newly discovered surviving brother to pay the costs of the obligation that the volunteer incurred?
The essential facts are as follows: On the Friday evening of March 26,1982, Naftula Schoenfeld and his wife, Gittel, both Orthodox Jews, were at home at their apartment in Brooklyn, New York. They heard some commotion coming from the floor above and they alighted from their apartment to ascertain the nature of the disturbance. They discovered that the police had broken down the door of a neighbor’s apartment — one Alexander Ochsenhaut, who had died. The Schoenfelds did not know the decedent but *586 ascertained that he was Jewish and apparently had no surviving family. They consulted with their rabbi, who told them that according to Judaic law and theology, it was extremely important that deceased Jews receive a proper Jewish burial. They testified that the rabbi informed them that burying a deceased Jew who died without surviving family was either a duty or the highest form of kindness — a “mitzvah”.
The Schoenfelds therefore, on their own, contacted an undertaker who arranged the funeral and burial. They agreed to assume these expenses although no written contract was executed. I find that the claimants became bound to the funeral home to perform the terms of the agreement.
Shortly after the funeral was held, the long-lost brother of the decedent appeared: Irving Ochsenhaut, who had not seen his brother for 37 years. The funeral home informed him that the claimants were paying the bill and he called on them to express his gratitude. At this point, the stories diverge. The claimants contend that the defendant promised to pay the costs of his brother’s funeral and burial as well as to make a donation to a synagogue in memory of his brother. The defendant testified that his largesse only extended to a contribution to a synagogue.
The defendant first contends that the claimants are not proper plaintiffs because, at the time of trial, they had not paid all of the funeral expenses which are the subject of this lawsuit. Nevertheless, it is apparent that the claimants obligated themselves to make these payments by entering into a contract with the funeral home. They are indeed involved in a genuine controversy with the funeral home regarding the bill. (Siegel, New York Practice, § 136.) Therefore, they do not have to wait until they are sued or have completed their payments in order to assert their claim for payment against the defendant. In other words I hold that they have standing to sue. (Ibid.)
The second contention is that the defendant was legally bound according to New York law to pay for the costs incurred by the claimants in their observance of Jewish law or morality. The claimant’s position is incorrect. First, *587 the primary liability for funeral expenses lies with the decedent’s estate. (Jaudon v White, 60 Misc 2d 86; SCPA 1811.) Second, it was not adequately proven that Jewish law mandated the actions by the Schoenfelds. But, even if Jewish law or custom required their acts, I am required to apply the law of this State solely (Moloney Funeral Home v Gurnell, 45 Misc 2d 678) to determine what legal obligations may be imposed upon the defendant. In New York, there is no statute or decisional law that would bind the defendant to the plaintiffs for their costs.
Section 141 of the Social Services Law is not applicable. That section applies only to render spouses and parents liable for funeral costs; no similar liability is cast upon brothers. Moreover, that statute is enforceable only by public welfare officials, not by private citizens who seek to shift the obligations they have assumed to those more closely related. (See Moloney Funeral Home v Gurnell, supra; Fairchild Sons v Diskin, 196 Misc 495, mot for lv to app den 276 App Div 847.)
Therefore, the general rule is this: in the absence of contract, there is no legal duty, of the type urged by the claimants, upon a brother to pay the funeral expenses of a deceased brother. (Moloney Funeral Home v Gurnell, supra; Fairchild Sons v Diskin, supra; Rutecki v Lukaszewski, 273 App Div 638.) Nor will a moral obligation create a legal duty where none exists. (See Fuller, The Morality of Law [Yale Univ Press, rev ed, 1969], pp 9, 10.)
The final issue for resolution is whether the defendant contracted to pay for these expenses. I find, based upon the testimony at trial, that the defendant did not expressly promise to pay the claimants the costs they incurred for the funeral and burial. Even if I found that the defendant had made an oral promise, as the claimants contend, this promise would be unenforceable since it was not supported by a writing as required by the Statute of Frauds. (See General Obligations Law, § 5-701.) Section 5-701 of the General Obligations Law requires contracts to answer for the debts of another to be written. The defendant’s alleged promise to assume the claimant’s financial obligation relating to funeral and burial expenses, would have had to be contained in writing to be enforceable. It was not. There *588 fore, I find that there was no enforceable contract between the claimants and the defendant.
Therefore, I hold that although the claimants performed a “mitzvah”, they are not entitled to recover damages. Judgment for defendant. No costs.